## No. 11,415.

### RUFF *v.* THE PEOPLE.

Decided December 28, 1925.

Plaintiff in error was convicted of unlawfully having in his possession a still for the manufacture of intoxicating liquor.

*Affirmed.*

*On Application for Supersedeas.*

1. CRIMINAL LAW—*Intoxicating Liquor—Former Jeopardy.* Where one was charged, tried and acquitted of unlawfully manufacturing and possessing intoxicating liquor, and subsequently charged with owning and possessing a still for the manufacture of intoxicating liquor, the former acquittal was no bar to the subsequent action.

2. INTOXICATING LIQUOR—*Still.* In a criminal prosecution for having possession of a still, the contention of defendant that an indispensable part being missing from the still found in his possession, judgment of conviction should be reversed, overruled.

3.  CRIMINAL LAW—*Evidence.* In a criminal case, material, relevant, and competent evidence sufficient to convince the jury, is necessary for a conviction, nothing more, nothing less, and circumstantial evidence is as competent and potent as any other.

*Error to the District Court of Larimer County, Hon. Robert G. Smith, Judge.*

Mr. FANCHER SARCHET, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. LOUIS W. BURFORD, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of unlawful possession of a still and sentenced to the penitentiary for a term of three to five years. To review that judgment he brings error and asks that the writ be made a supersedeas.

Defendant says he was twice put in jeopardy; that the evidence was insufficient; and that the court's instructions were erroneous.

The charge was that defendant, on June 17, 1925, owned and possessed "a certain still used, designed and intended for the manufacture of intoxicating liquor," contrary to section 1, p. 220, Laws 1925. The information was filed July 20, 1925. The sheriff, on June 18, 1925, filed a criminal complaint against defendant in a justice of the peace court charging him with unlawfully manufacturing and possessing intoxicating liquor. On that charge, in that court, and prior to the trial in the instant case, defendant was tried and acquitted, hence the plea of double jeopardy. The charges were of distinct and separate offenses under different statutes, and the plea in bar, interposed here on the former acquittal, was properly overruled.

A metal tank, or boiler, or cooker, especially adapted to

use for distilling liquor, and formerly used for that purpose, two barrels of mash, and some empty barrels, were found buried in different places on defendant's premises and near his residence. When the mash was discovered defendant said to the officers, "Well, you've got this much on me, I might as well tell you the whole thing," and showed them where the empty barrels and boiler were concealed. He then told them the outfit belonged to his brother and himself, that they put the mash in some ten days before, and that it was about ready to cook. So much defendant admitted on the stand but said that he did this for the purpose of "kidding" the officers, that he had in fact buried the boiler to accomodate the wife of a neighbor, that he owned the empty barrels and was going to sell them, that they were not buried but only accidentally covered with discarded hay, that "Bill Blondy" buried the mash there and without warning left for Cheyenne, that he had ordered Blondy to take it away but forgot all about it after Blondy left, "and I just thought, 'Well, I didn't put it there, and I ain't going to take it away. Bill may be back some time and then he will have to take the stuff away!'" This would not only sustain a conviction but make it imperative. The confession to the officers was reasonable and logical, defendant's explanation on the stand was ridiculous and absurd. The remainder of his testimony but deepens this conviction. Even in cold print it shifts, sidesteps, equivocates, evades and prevaricates. Counsel for defendant meets this situation with the contention that what was found by the officers was not a still but a possible part of one, that a coil or worm is an indispensable portion of a still, and as none was found in defendant's possession the offense charged was not proved and the judgment must be reversed. The Attorney General answers that such a construction is too narrow, and insists that enough was found to satisfy the statute. Each bases his argument upon the theory that the only sufficient proof of the offense is the actual discovery of the prohibited apparatus in the possession of the accused. That would certainly be the most satisfactory

evidence, but it is by no means indispensable. Defendant might have smelted the whole concern and thrown it into the highway before the arrival of the officers and yet have been properly convicted on the evidence of those who had seen it in his possession and in operation; he might have been convicted without any piece of it ever having been actually seen in his possession by anyone. Circumstantial evidence is as competent and potent in such a case as in any other. Material, relevant, and competent evidence, sufficient to convince the jury, is necessary to conviction, nothing more, nothing less. The mere fact of the absence of some material part of the still at the time of the raid is of no moment, if other admissible evidence is sufficient to convince the jury that at the time charged the still was in defendant's possession. The evidence of that fact here is overwhelming.

The objections to instructions given and refused need not be examined, further than to say that they are all based on the above mentioned erroneous theory. With that disposed of they demand no consideration.

The supersedeas is denied and the judgment affirmed.

Mr. Justice Whitford not participating.